UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                            :
RITA KOHARI *et al.*,                                       :
                                                            :
                          Plaintiffs,                       :
                                                            :                21 Civ. 6146 (JPC)
              -v-                                            :
                                                            :              OPINION AND ORDER
METLIFE GROUP, INC. *et al.*,                               :
                                                            :
                          Defendants.                       :
                                                            :
------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      Plaintiffs Rita Kohari, John Radolec, and Mohani Jaikaran, who are current and former

participants in the MetLife 401(k) Plan, bring this putative class action pursuant to the Employee

Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001, *et seq.* ("ERISA"),

against Defendants MetLife Group, Inc., Metropolitan Life Insurance Company, the Benefit Plans

Investment Advisory Committee, and John and Jane Does 1-20.  Plaintiffs allege that Defendants

breached their fiduciary duties to the plan and its participants and beneficiaries in violation of

ERISA by applying an imprudent and disloyal preference for selecting and retaining MetLife

proprietary index fund products to offer to plan participants despite their poor performance and

high costs in comparison to similar investment products in the marketplace.  Plaintiffs allege that

Defendants' imprudence and disloyalty have cost plan participants millions of dollars in excessive

fees and lost investment returns.  Plaintiffs also allege that MetLife Group, Inc. and Metropolitan

Life Insurance Company breached their fiduciary duties by failing to monitor the investments.

Defendants have moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure

12(b)(6).  For the reasons discussed below, Defendants' motion to dismiss is denied.

## I.   Background

### A. Facts

The following facts, which are assumed true for purposes of this Opinion and Order, are taken from the Complaint, Dkt. 1 ("Compl."), and the documents incorporated therein by reference, *see Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (noting that at the motion to dismiss stage, a court may consider "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference" as well as any documents "integral" to the complaint, *i.e.*, "where the complaint 'relies heavily upon [the document's] terms and effects'" (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995))).

Plaintiffs are former and current participants in the MetLife 401(k) Plan (the "Plan").[1] Compl. ¶¶ 14-16, 18.  Defendant MetLife Group, Inc. ("MetLife Group") is the current Plan sponsor.  *Id.* ¶¶ 17, 23.  Defendant Metropolitan Life Insurance Company ("Metropolitan Life") previously served as the Plan sponsor.[2]  *Id.* ¶¶ 17, 27.  As the Plan sponsor, MetLife Group and Metropolitan Life have or previously had "ultimate decision-making authority with respect to the Plan and the management and administration of the Plan and the Plan's investments."  *Id.* ¶¶ 23,

---

[1] Plaintiff Kohari participated in the Plan from approximately 2010 to 2020 and was invested in the MetLife Bond Index Fund, Balanced Index Fund, and Large Cap Growth Index Fund during the statutory period.  Compl. ¶ 14.  Plaintiff Radolec is a current participant who has participated in the Plan since 1977 and has been invested in the MetLife Balanced Index Fund, Large Cap Equity Index Fund, and Large Cap Value Index Fund during the statutory period.  *Id.* ¶ 15.  Plaintiff Jaikaran participated in the Plan from 1986 to 2018 and was invested in the MetLife Bond Index Fund, Balanced Index Fund, Large Cap Equity Index Fund, Large Cap Value Index Fund, Large Cap Growth Index Fund, Mid Cap Equity Index Fund, and Small Cap Equity Index Fund during the statutory period.  *Id.* ¶ 16.

[2] The Complaint alleges that "[t]he Plan was sponsored by Metropolitan Life Insurance Company until September 2018, when MetLife Group became the plan sponsor."  Compl. ¶ 17. However, the Complaint also alleges that "Metropolitan Life was the Plan sponsor from at least 2014 until 2017."  *Id.* ¶ 27.

27.  They are also identified as "the Administrator of the Plan in the Plan's Form 5500s filed with the United States Department of Labor,"[3] which renders them "a fiduciary of the Plan for purposes of ERISA."  *Id.* ¶¶ 24, 28.  Because MetLife Group and Metropolitan Life currently exercise or previously exercised "discretionary authority or discretionary control with respect to management and administration of the Plan and disposition of Plan assets," each likewise qualifies as a "functional fiduciary under 29 U.S.C. § 10002(21)(A)."  *Id.* ¶ 23.  "[T]he responsibility for appointing and removing other fiduciaries carries with it an accompanying duty to monitor the appointed fiduciaries, and to ensure that they are complying with the terms of the Plan and ERISA's statutory standards."  *Id.* ¶ 25.

Defendant Benefit Plans Investment Advisory Committee (the "Committee") assists MetLife Group with the administration of the Plan, including by "select[ing] the funds for the Plan's investment menu."  *Id.* ¶ 30.  The Complaint alleges that "[t]o the extent that MetLife Group has delegated any of its fiduciary functions to others, such as the Committee, it maintained fiduciary responsibilities with respect to the Plan."  *Id.* ¶ 25.  The Complaint also names as Defendants "John and Jane Does 1-20," who "are or were members of the Committee during the statutory period."  *Id.* ¶ 31.  Plaintiffs allege that "[t]he identities of the Doe Defendants are not currently known to Plaintiffs."  *Id.*

---

[3] According to the United States Department of Labor, "[t]he Form 5500 Series is part of ERISA's overall reporting and disclosure framework, which is intended to assure that employee benefit plans are operated and managed in accordance with certain prescribed standards and that participants and beneficiaries, as well as regulators, are provided or have access to sufficient information to protect the rights and benefits of participants and beneficiaries under employee benefit plans."  *Form 5500 Series*, U.S. Dep't of Labor, https://www.dol.gov/agencies/ebsa/employers-and-advisers/plan-administration-and-compliance/reporting-and-filing/form-5500 (last visited on July 29, 2022).

### 1. The Plan

The Plan covers eligible employees of Metropolitan Life, MetLife Group, Metropolitan Property and Casualty Insurance Company, MetLife Funding, Inc., MetLife Credit Corp., and SafeGuard Health Plans, Inc. *Id.* ¶ 19. The Plan is a "defined contribution plan,"[4] which permits eligible employees saving for retirement to "contribute a percentage of their earnings on a pre-tax basis to the Plan." *Id.* ¶¶ 18-19. In a defined contribution plan, a participant's benefits "are limited to the value of their own investment accounts, which is determined by the market performance of employee and employer contributions, less expenses." *Id.* ¶ 3 (quoting *Tibble v. Edison Int'l*, 575 U.S. 523, 525 (2015)).

In contrast, in a defined benefit plan, "the participant is entitled to a fixed monthly pension payment, while the employer is responsible for making sure the plan is sufficiently capitalized, and thus the employer bears all risks related to excessive fees and investment underperformance." *Id.* Consequently, as alleged, "[i]n a defined benefit plan, the employer and the plan's fiduciaries have every incentive to keep costs low and to remove imprudent investments," whereas an employer in a defined contribution plan "has no incentive to closely monitor the plan to ensure that every investment remains prudent, because all risks related to high fees and poorly performing investments are borne by the employee." *Id.*

### 2. Alleged Breaches of Fiduciary Duties

As a "mega" or "jumbo" plan, the Plan had "between 36,000 and 42,000 participants and approximately $6.4 billion to $7.3 billion in assets" throughout the statutory period. *Id.* ¶ 20. "As

---

[4] Title 29, United States Code, Section 1002 defines a "defined contribution plan" or "individual account plan" as "a pension plan which provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account." 29 U.S.C. § 1002(34).

of 2019, the Plan was the 111th largest defined contribution plan in the country out of a total of 718,632 defined contribution plans." *Id.* The Plan's investment menu, which has remained the same throughout the statutory period, consists of nine investment options and a self-directed brokerage account "selected and retained" by Defendants. *Id.* ¶¶ 5, 21. Eight of those investment options are MetLife proprietary investments, and seven of those are proprietary index funds that are at issue here: the MetLife Bond Index Fund, Balanced Index Fund, Large Cap Equity Index Fund, Large Cap Value Index Fund, Large Cap Growth Index Fund, Mid Cap Equity Index Fund, and Small Cap Equity Index Fund (collectively, the "MetLife Index Funds").[5] *Id.*

As with other index funds, each MetLife Index Fund is "a passively managed, pooled-investment product designed to mirror the performance of a particular benchmark index." *Id.* ¶ 37. The marketplace for index funds is "highly competitive," and for any given benchmark index, there typically are "dozens of different products" offered by different companies that track benchmark indices with varying degrees of precision and charge varying amounts of fees. *Id.* ¶¶ 38-39. Higher fees, however, do not "in any way correspond to a higher quality product or higher level of services" and, in fact, "the least expensive offerings often have the lowest level of tracking error." *Id.* ¶ 40. Indeed, as alleged, companies such as BlackRock, Northern Trust, State Street, Vanguard, and Fidelity "have captured a very large percentage of market share" of index funds "based on several competitive advantages: lower investment management fees than competing firms, a high degree of institutional expertise, sophisticated trading platforms that minimize trading costs, and a large asset base that provides economies of scale." *Id.* ¶ 39.

---

[5] Plaintiffs do not assert any claims against Defendants as to the remaining two investment options: International Equity Fund and Fixed Income Fund. Compl. ¶ 21 n.8.

Plaintiffs allege that Defendants breached their fiduciary duties by "us[ing] the Plan to promote MetLife's proprietary financial products and earn profits for MetLife," *id.* ¶ 5, and by failing "to prudently and objectively evaluate index fund options for the Plan," *id.* ¶ 6. Specifically, the Complaint alleges that Defendants failed to adequately investigate identical marketplace alternatives "in selecting and retaining index funds for the Plan, choosing instead to further MetLife's interests by using the MetLife Index Funds," even though the MetLife Index Funds "charged fees that were significantly higher than the fees charged by more competitive options that were identical (other than their lower cost)." *Id.* ¶ 46. Plaintiffs contend that "[h]ad Defendants been monitoring the expenses of these index funds and performed a reasonable investigation of marketplace alternatives consistent with the practice of other fiduciaries of 401(k) plans, they would have replaced the MetLife Index Funds with one of the more competitive alternatives in the marketplace." *Id.*

The Complaint also alleges that the MetLife Index Funds were "of lower quality than other options when it came to their sole function—tracking the underlying index." *Id.* ¶ 48. For example, "[f]or the 5-year period ending in 2019, two of the [MetLife Index Funds] performed as expected, meaning equal to the benchmark minus expenses, five index funds performed worse than expected, and no index fund[] performed better than expected." *Id.* The MetLife Index Funds also "underperformed the alternatives . . . by roughly the difference in costs." *Id.* ¶ 47. The Complaint further alleges that Defendants failed to account for "[i]nstitutional factors, such as assets under management," which demonstrate the superiority of index funds managed by companies such as Vanguard, State Street, Northern Trust, Fidelity, and BlackRock, each of which "manages over $300 billion in indexed assets (with BlackRock, State Street, and Vanguard managing over $1

trillion in passive investments)." *Id.* ¶ 49.  By comparison, MetLife manages "under $35 billion in indexed assets." *Id.*

Plaintiffs further allege that Defendants' processes for selecting and retaining the more costly and less superior MetLife Index Funds were not only imprudent but also disloyal. *Id.* ¶ 42. According to Plaintiffs, Defendants chose the MetLife Index Funds because "[e]ach of the MetLife Index Funds charge an annual operating expense that is paid to MetLife and deducted from the rate of return of the fund." *Id.* ¶ 43.  In addition to investment management fees, "MetLife also claims a tax deduction called the Dividend Received Deduction ('DRD') on dividends received on the assets owned by MetLife on behalf of the Plan," which are worth millions of dollars, because "the MetLife Index Funds are structured as separate accounts." *Id.*  In other words, Plaintiffs allege that had Defendants not invested the Plan's assets in the MetLife Index Funds, MetLife would have received significantly less money from investment management fees and the DRD tax benefits. *Id.*

According to Plaintiffs, they "did not have actual knowledge of the specifics of Defendants' decision-making processes with respect to the Plan (including Defendants' processes for selecting, monitoring, evaluating and removing Plan investments), because this information is solely within the possession of Defendants prior to discovery." *Id.* ¶ 51.  Plaintiffs also allege that they "did not have knowledge of all material facts . . . necessary to understand that Defendants breached their fiduciary duties and engaged in other unlawful conduct in violation of ERISA, until shortly before this suit was filed." *Id.*

## B.  Procedural History

Plaintiffs filed the Complaint on July 19, 2021, alleging claims for breach of duties of loyalty and prudence in violation of 29 U.S.C. § 1104(a)(1)(A)-(B) against all Defendants, and for

failure to monitor fiduciaries in violation of 29 U.S.C. § 1002(21)(A) against MetLife Group and Metropolitan Life.  *See* Compl. ¶¶ 61-73.  On October 6, 2021, Defendants filed a motion to dismiss the Complaint, arguing that Plaintiffs fail to state a claim for breach of fiduciary duty, both as to the duty of prudence and the duty of loyalty, and that Plaintiffs fail to state a claim for failure to monitor.  Dkts. 34, 35 ("Motion") at 4-15.  Defendants also argue that the Court should dismiss Plaintiffs' claims as time-barred under ERISA's three-year limitations period.  *Id.* at 15-16. Plaintiffs filed an opposition to Defendants' motion on November 3, 2021, Dkt. 36 ("Opposition"), and Defendants filed a reply on November 24, 2021, Dkt. 39.  The parties also filed supplemental briefing on January 26 and 28, 2022, addressing the impact of the Supreme Court's recent decision in *Hughes v. Northwestern University*, 142 S. Ct. 737 (2022), on Plaintiffs' claims.  *See* Dkts. 40-41.

## II.    Legal Standard

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Thus, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Although the Court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor," *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015), it need not "accept as true legal conclusions couched as factual allegations," *LaFaro v. N.Y. Cardiothoracic Grp.*

*PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009).  The Supreme Court has recognized that a motion to dismiss for failure to state a claim serves an "important mechanism for weeding out meritless claims" in the ERISA context." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014).  At the same time, however, "ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences." *Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718 (2d Cir. 2013) ("*Morgan Stanley*") (citation omitted).

"The lapse of a limitations period is an affirmative defense that a defendant must plead and prove" under Federal Rule of Civil Procedure 8(c)(1).  *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008); *accord Demopoulos v. Anchor Tank Lines, LLC*, 117 F. Supp. 3d 499, 507 (S.D.N.Y. 2015) ("Because the statute of limitations is an affirmative defense, Defendants carry the burden of showing that Plaintiff failed to plead timely claims.").  "Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Thea v. Kleinhandler*, 807 F.3d 492, 501 (2d Cir. 2015) (citation omitted).  However, because the Court must accept all of the factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor on a motion to dismiss, *Biro*, 807 F.3d at 544, dismissal on statute of limitations grounds at the motion to dismiss stage is not appropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Clement v. United Homes, LLC*, 914 F. Supp. 2d 362, 369 (E.D.N.Y. 2012) (quoting *Ortiz v. Cornetta*, 867 F.2d 146, 148 (2d Cir. 1989)).  In other words, "the Court can only grant a motion to dismiss based on statute of limitations grounds if there is no factual question as to whether the alleged violations occurred within the statutory

period." *Id.*; *see Staehr*, 547 F.3d at 425 (holding that dismissal based on an affirmative defense at the pleadings stage is warranted only if "it is clear from the face of the complaint . . . that the plaintiff's claims are barred as a matter of law" (quoting *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000))).

### III.    Discussion

ERISA is a "comprehensive and reticulated statute," *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251 (1993) (citation omitted), that was enacted for the "central purpose" of "protect[ing] beneficiaries of employee benefit plans," *Rinehart v. Lehman Bros. Holdings Inc.*, 817 F.3d 56, 65 (2d Cir. 2016) (internal quotation marks omitted).  To carry out this purpose, ERISA imposes upon fiduciaries "a number of detailed duties and responsibilities, which include the proper management, administration, and investment of [plan] assets, the maintenance of proper records, the disclosure of specified information, and the avoidance of conflicts of interest."  *Mertens*, 508 U.S. at 251-52 (internal quotation marks omitted) (alteration in original).

### A.  Statute of Limitations

The Court begins by addressing Defendants' argument that Plaintiffs' claims are time-barred under ERISA's three-year limitations period.  Motion at 15-16.  Breach of fiduciary duty suits under ERISA ordinarily must be filed within six years of "(A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation."  29 U.S.C. § 1113(1).  However, the six-year limitations period "is accelerated when the plaintiff has actual knowledge of the breach [of fiduciary duty]."  *Walsh v. Ruane, Cunniff & Goldfarb*, No. 19 Civ. 9302 (ALC), 2022 WL 902285, at *3 (S.D.N.Y. Mar. 28, 2022).  In such circumstance, a breach of fiduciary duty suit under ERISA must be brought within "three years after the earliest date on which the plaintiff had

actual knowledge of the breach or violation." 29 U.S.C. § 1113(2).[6] "Although ERISA does not define the phrase 'actual knowledge,' its meaning is plain": "knowledge that is actual, not merely a possible inference from ambiguous circumstances." *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 140 S. Ct. 768, 775-76 (2020) (internal quotation marks omitted); *see also Browe v. CTC Corp.*, 15 F.4th 175, 191 (2d Cir. 2021) ("The term actual knowledge is strictly construed and constructive knowledge will not suffice." (quoting *L.I. Head Start Child Dev. Servs. v. Econ. Opportunity Comm'n of Nassau Cnty.*, 710 F.3d 57, 67 (2d Cir. 2013))).

"A plaintiff has 'actual knowledge' of a breach or violation 'when he has knowledge of all material facts necessary to understand that an ERISA fiduciary has breached his or her duty or otherwise violated the Act.'" *Muehlgay v. Citigroup Inc.*, 649 F. App'x 110, 111 (2d Cir. 2016) (quoting *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 193 (2d Cir. 2001)). As the Supreme Court recently made clear, "§ 1113(2) requires more than evidence of disclosure alone." *Sulyma*, 140 S. Ct. at 777. While the fact that "all relevant information was disclosed to the plaintiff is no doubt *relevant* in judging whether he gained knowledge of that information," "if a plaintiff is not aware of a fact, he does not have 'actual knowledge' of that fact however close at hand the fact might be." *Id.*; *see also Falberg v. Goldman Sachs Grp., Inc.*, No. 19 Civ. 9910 (ER), 2022 WL 538146, at *9 (S.D.N.Y. Feb. 14, 2022) ("[T]he fact that plaintiffs may have received notices or disclosures about a breach is not sufficient to establish actual knowledge.").

In *Sulyma*, the Supreme Court addressed whether a retirement plan participant who receives disclosures regarding the plan necessarily has "actual knowledge" of the information contained in the disclosures that he receives but does not read or cannot recall reading, such that

---

[6] Section 1113 further provides that "in the case of fraud or concealment," the statute of limitations period begins when the plaintiff discovers the alleged breach. 29 U.S.C. § 1113. In such cases, the suit must be filed within six years of "the date of discovery." *Id.*

the three-year limitations period under section 1113(2) applies.  On appeal, the petitioners argued, among other things, that once a plaintiff receives a disclosure, he "ha[s] actual knowledge" of the defendant's breach or violation under section 1113(2) because "he could acquire it with reasonable effort."  *Sulyma*, 140 S. Ct. at 777.  The Supreme Court disagreed, noting that the petitioners' proposed construction would turn section 1113(2) "into what it is plainly not: a constructive-knowledge requirement."  *Id.*  Indeed, the Supreme Court observed that under the plain meaning of "actual knowledge," "the plaintiff's knowledge must be more than 'potential, possible, virtual, conceivable, theoretical, hypothetical, or nominal.'"  *Id.* at 776 (quoting Black's Law Dictionary 53 (4th ed. 1951)); *see also Caputo*, 267 F.3d at 193 (holding that "it is not enough that plaintiffs had notice that something was awry; plaintiffs must have had specific knowledge of the actual breach of duty upon which they sued" (cleaned up)).

Defendants argue that Plaintiffs' claims are time-barred under the three-year limitations period because "ERISA requires plan administrators to deliver to plan participants annual disclosures that reveal the fees charged for investment options, and to provide ongoing information about fund performance."  Motion at 15.  And because Plaintiffs "began participating in the Plan in, respectively, the 1970s, 1980s, and 2010s," Defendants contend that Plaintiffs "undoubtedly had actual knowledge of the alleged facts for their fiduciary breach claim more than three years prior to filing this action" as the disclosures contained "the fee and performance data that are the root of their claim."  *Id.*  But disclosure, alone, is insufficient to establish "actual knowledge" under section 1113(2).  *See Sulyma*, 140 S. Ct. at 777.  And in fact, the Complaint alleges that "Plaintiffs did not have knowledge of all material facts . . . necessary to understand that Defendants breached their fiduciary duties and engaged in other unlawful conduct in violation of ERISA, until shortly before this suit was filed."  Compl. ¶ 51.  Likewise, Plaintiffs allege that they "did not have actual

knowledge of the specifics of Defendants' decision-making processes with respect to the Plan . . . because this information is solely within the possession of Defendants prior to discovery." *Id.*

Neither the Complaint nor Defendants contend that the annual disclosures sent to Plaintiffs provided information beyond the fee and performance data—specifically, information regarding the underlying process for reaching decisions as to each transaction or investment, or as to whether the fees themselves are reasonable. In other words, there is no factual basis on which the Court can conclude at the motion to dismiss stage that the Plaintiffs' claims are time-barred under the three-year limitations period. *See Vellali v. Yale Univ.*, 308 F. Supp. 3d 673, 692-93 (D. Conn. 2018) (concluding that the defendants failed to show that the plaintiffs' breach of duty claims are time-barred under the three-year limitations period because "[t]he various disclosures the defendants describe give information about transactions or investments, not the underlying process for reaching the decision regarding each or whether the fees themselves are reasonable"); *Walsh*, 2022 WL 902285, at *4 (declining to dismiss breach of duty claims at the pleadings stage based on statute of limitations because "[a]t the least, discovery is needed to ascertain whether [the plaintiff] obtained 'actual knowledge' from the Form 5500 filings"); *Moreno v. Deutsche Bank Ams. Holding Corp.*, No. 15 Civ. 9936 (LGS), 2016 WL 5957307, at *5 (S.D.N.Y. Oct. 13, 2016) ("Dismissal is not warranted based on Defendants' statute of limitations affirmative defense as it is not clear from the face of the Complaint or judicially noticed court filings that Plaintiffs' claims are time barred under 29 U.S.C. § 1113.").

Accordingly, Defendants have not shown that Plaintiffs' claims are time-barred under section 1113(2)'s three-year limitations period.[7]

---

[7] Plaintiffs also argue in their Opposition that their claims are timely under the six-year limitations period under section 1113(1) because they "have limited their claims to the period fa[l]ling within six years of the date that they filed this action." Opposition at 22 n.17. Since

**B.  Breach of Fiduciary Duties**

"To state a claim for breach of fiduciary duty [under ERISA], a complaint must allege that (1) the defendant was a fiduciary who (2) was acting in a fiduciary capacity, and (3) breached his fiduciary duty."  *Cunningham v. USI Ins. Servs., LLC*, No. 21 Civ. 1819 (NSR), 2022 WL 889164, at *2 (S.D.N.Y. Mar. 25, 2022).  Only the third element is at issue: whether the Complaint alleges that Defendants breached their fiduciary duties of prudence and loyalty.

**1.  Duty of Prudence**

An ERISA fiduciary has a duty of prudence, which requires that the fiduciary act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent [person] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and like aims."  29 U.S.C. § 1104(a)(1)(B).  "The prudence of a fiduciary is measured according to the objective prudent person standard developed in the common law of trusts."  *Sacerdote v. New York Univ.*, 9 F.4th 95, 107 (2d Cir. 2021) (internal quotation marks omitted).  Under this standard, the prudence of a fiduciary's actions "is judged based upon information available to the fiduciary at the time of each investment decision and not from the vantage point of hindsight."  *Brown v. Daikin Am., Inc.*, No. 18 Civ. 11091 (PAC), 2021 WL 1758898, at *6 (S.D.N.Y. May 4, 2021) (internal quotation marks omitted).  In other words, "this standard focuses on a fiduciary's conduct in arriving at an investment decision, not on its results, and asks whether a fiduciary employed the appropriate methods to investigate and determine the merits of a particular investment."  *Morgan Stanley*, 712 F.3d at 716 (cleaned up); *Ferguson v. Ruane Cunniff & Goldfarb Inc.*, No. 17 Civ. 6685 (ALC), 2019 WL 4466714, at *5 (S.D.N.Y.

Defendants do not dispute the timeliness of Plaintiffs' claims under the six-year limitations period in their Motion nor move to dismiss Plaintiffs' claims on this basis, the Court does not decide whether Plaintiffs' claims are timely under the six-year limitations period at this time.

Sept. 18, 2019) ("[C]ourts analyze a fiduciary's *process* to determine prudence, not outcome."). Moreover, a plan fiduciary has "a continuing duty of some kind to monitor investments and remove imprudent ones." *Tibble*, 575 U.S. at 530; *see also Morgan Stanley*, 712 F.3d at 717 ("An ERISA fiduciary's investment decisions also must account for changed circumstances and '[a] trustee who simply ignores changed circumstances that have increased the risk of loss to the trust's beneficiaries is imprudent.'" (quoting *Armstrong v. LaSalle Bank Nat'l Ass'n*, 446 F.3d 728, 734 (7th Cir. 2006))).

In considering a motion to dismiss, the district court must ensure that the complaint "alleges *nonconclusory* factual content raising a *plausible* inference of misconduct and does not rely on the vantage point of hindsight," while also being "cognizant that ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences." *Sacerdote*, 9 F.4th at 107 (citations and internal quotation marks omitted). Therefore, "[a] claim for breach of the duty of prudence will survive a motion to dismiss if the court, based on circumstantial factual allegations, may reasonably infer from what is alleged that the process was flawed or that an adequate investigation would have revealed to a reasonable fiduciary that the [decision] at issue was improvident." *Id.* at 108 (internal quotation marks omitted); *see also Morgan Stanley*, 712 F.3d at 718 (recognizing that the allegations of a complaint need not "directly address" the process by which the plan was managed); *Ferguson*, 2019 WL 4466714, at *5 (observing that when a plaintiff relies on "inferences from circumstantial allegations, this standard generally requires the plaintiff to allege facts, accepted as true, showing that a prudent fiduciary in like circumstances would have acted differently"). The inquiry into a plan fiduciary's decision-making process is necessarily "context specific," *Fifth Third Bancorp*, 573 U.S. at 425, and "requires assessing the allegations of the complaint as a whole" to determine

whether the "facts alleged are suggestive of, rather than merely consistent with, a finding of misconduct," *Morgan Stanley*, 712 F.3d at 719 (internal quotation marks omitted).

Plaintiffs allege that Defendants acted imprudently by selecting and retaining the MetLife Index Funds despite their underperformance when there were comparable investment options that cost less.  Compl. ¶¶ 8-9, 42-50.  Plaintiffs also allege that Defendants acted imprudently in continuing to offer the MetLife Index Funds even though they each "underperformed the alternatives . . . by roughly the difference in costs." *Id.* ¶ 47.  Defendants move to dismiss the duty of prudence claim primarily for the reason that Plaintiffs have not alleged sufficient facts to meaningfully compare the expense ratios and performances of the alternative funds or to even ascertain whether these investment options are "identical" to the MetLife Index Funds.  Motion at 6-12.  For example, Defendants argue that "[f]ifteen of the seventeen alternatives plaintiffs offer are collective investment trusts (CITS)," which are different from and tend to have lower operating costs than mutual funds since they do not have to meet Securities and Exchange Commission reporting requirements.  *Id.* at 6.  But as Plaintiffs point out in their Opposition, the Complaint alleges that "[t]he MetLife Index Funds are structured as separate accounts," not mutual funds. Compl. ¶ 43; *see also* Opposition at 13 & n.8.  Moreover, "the overwhelming trend with district courts in this Circuit is to defer deciding the question of whether two funds are proper comparators until after discovery." *In re Omnicom ERISA Litig.*, No. 20 Civ. 4141 (CM), 2021 WL 3292487, at *13 (S.D.N.Y. Aug. 2, 2021); *see Cunningham v. Cornell Univ.*, No. 16 Civ. 6525 (PKC), 2017 WL 4358769, at *7 (S.D.N.Y. Sept. 29, 2017) (noting that whether two funds were proper comparators raised "factual questions that [we]re not properly addressed on a motion to dismiss").

It is also worth noting that the pleading requirement for an ERISA plaintiff does not rise to the standard advanced by Defendants in their Motion.  On a motion to dismiss, the Court "must

construe [the complaint] liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiffs' favor." *Sacerdote*, 9 F.4th at 106-07 (2d Cir. 2021).  As noted above, the Second Circuit has recognized that "ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences." *Morgan Stanley*, 712 F.3d at 718; *accord Sacerdote*, 9 F.4th at 107.   Here, the Complaint alleges that:

- "[t]here were numerous investment managers in the marketplace, including BlackRock, Northern Trust, State Street, Vanguard, and Fidelity, that throughout the relevant period offered products tracking the same benchmark indices as each of the MetLife Index Funds with a high degree of precision, while charging very low fees," Compl. ¶ 44;

- "the MetLife Index Funds are considerably more expensive—indeed *several times more expensive*—than otherwise identical alternatives being used in other large Plans," *id.* ¶ 45;

- "Defendants chose these proprietary funds even though they charged fees that were significantly higher than the fees charged by more competitive options that were identical (other than their lower cost)," *id.* ¶ 46;

- "[t]he use of the MetLife Index Funds has resulted in significant losses for participants, as each index fund underperformed the alternatives listed above by roughly the difference in costs," *id.* ¶ 47; and

- "[f]or the 5-year period ending in 2019, two of the seven index funds performed as expected, meaning equal to the benchmark minus expenses, five index funds performed worse than expected, and no index funds performed better than expected," *id.* ¶ 48.

The Complaint also provides a chart setting forth the expense ratio for each of the MetLife Index Funds and comparators. *See id.* at 14-16. Drawing all reasonable inferences in Plaintiffs' favor, the Court finds that Plaintiffs have plausibly alleged that Defendants acted imprudently by selecting and maintaining the MetLife Index Funds despite their underperformance and higher fees compared to similar investment options in the marketplace. *See, e.g.*, *In re Omnicom ERISA Litig.*, 2021 WL 3292487, at *13 (holding that the plaintiffs' allegations that the two funds "'appear to follow essentially the same strategy' because they have the same glide path . . . make it at least plausible [at the motion to dismiss stage] that the two suites will be found to be comparable"); *Falberg v. Goldman Sachs Grp., Inc.*, No. 19 Civ. 9910 (ER), 2020 WL 3893285, at *9 n.15 (S.D.N.Y. July 9, 2020) (rejecting the defendants' argument that the plaintiff failed to "plead comparators with specificity" where the plaintiff "identifie[d] them by name and assert[ed] that they are managed with similar strategies"); *Cunningham*, 2017 WL 4358769, at *8 ("While it may turn out that defendants had legitimate and prudent reasons for making the challenged investments available to participants—or that the retail and corresponding institutional mutual funds were not truly identical—accepting the Complaint's allegations as true and drawing all reasonable inferences in favor of the plaintiffs, plaintiffs' allegations are sufficient, at this stage, to survive a motion to dismiss.").

As to the remainder of Defendant's arguments that Plaintiffs "cherry-picked alternative funds," Motion at 9, failed to identify the factual basis and sources for their financial data, *id.* at 8, 11 n.9, 12, and failed to meaningfully define certain terms, *id.* at 7-8, 10-11, these arguments "appear[] to be based on documents, alleged factual inaccuracies, and the absence of 'evidentiary basis' for the claims—as opposed to arguments that Plaintiffs' claims have inescapable legal

deficiencies." *Mulligan v. Long Island Univ.*, No. 18 Civ. 2885 (ERK) (SJB), 2018 WL 8014320, at *2 (E.D.N.Y. Dec. 13, 2018). Such arguments are "not resolvable at this stage." *Id.*

### 2. Duty of Loyalty

An ERISA fiduciary also has a duty of loyalty, which requires that the fiduciary act "solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). "The Second Circuit has described the duty as one requiring a fiduciary to 'act' . . . with an 'eye single to the interests of the participants and beneficiaries.'" *In re SunEdison, Inc. ERISA Litig.*, 331 F. Supp. 3d 101, 114 (S.D.N.Y. 2018) (quoting *State St. Bank & Trust Co. v. Salovaara*, 326 F.3d 130, 136 (2d Cir. 2003)), *aff'd sub nom. O'Day v. Chatila*, 774 F. App'x 708 (2d Cir. 2019); *see also Falberg*, 2020 WL 3893285, at *11 ("Loyalty has been called 'the most fundamental duty of a trustee' and the onus it places on fiduciaries has been described as 'stricter than the morals of the marketplace.'" (quoting *Pegram v. Herdrich*, 530 U.S. 211, 224-25 (2000))). Therefore, a plan fiduciary's action that "incidentally benefits" the plan sponsor does not violate the duty of loyalty so long as, "after careful and impartial investigation, [the plan fiduciary] reasonably conclude[s] [that the action is] best to promote the interests of participants and beneficiaries." *Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir. 1982). At the same time, however, allegations "supporting an inference that the defendant acted *for the purpose* of providing benefits to itself or someone else," and to the expense of plan participants, may state a claim for breach of duty of loyalty. *Ferguson*, 2019 WL 4466714, at *4.

Defendants seek dismissal of the duty of loyalty claim for three reasons. First, Defendants argue that Plaintiffs "merely recast their circumstantial allegations regarding breaches of the duty of prudence as breaches of the duty of loyalty." Motion at 12. While the duties of prudence and

loyalty are "conceptually distinct from one another," the "analysis of the duty of loyalty may inform the analysis of the duty of prudence and vice versa." *Vellali*, 308 F. Supp. 3d at 688; *Leber v. Citigroup 401(K) Plan Inv. Committee*, 129 F. Supp. 3d 4, 13 (S.D.N.Y. 2015) ("[T]he duty of loyalty and the duty of prudence . . . are interrelated and overlapping."). This is particularly true here, where Plaintiffs allege that Defendants not only imprudently selected and retained the MetLife Index Funds, but did so for the disloyal purpose of benefiting themselves by way of investment management fees and tax benefits. *See* Compl. ¶¶ 42-43. In light of these allegations, the Court finds that Plaintiffs' duty of loyalty claim is not duplicative of their duty of prudence claim.

Second, Defendants argue that "[t]he mere fact that defendants offered proprietary investment options to plaintiffs does not provide the Court with any basis to infer disloyalty." Motion at 13. Defendants are correct that including a proprietary investment fund in a plan's investment menu "do[es] not, standing alone, support an inference that a defendant breached its fiduciary duties." *Bekker v. Neuberger Berman Grp. LLC*, No. 16 Civ. 6123 (LTS) (BCM), 2018 WL 4636841, at *6 (S.D.N.Y. Sept. 27, 2018). But Plaintiffs do not merely allege that Defendants breached their duty of loyalty by selecting and retaining proprietary investments. Rather, Plaintiffs allege that Defendants applied a disloyal preference for proprietary investments because "[e]ach of the MetLife Index Funds charge an annual operating expense that is paid to MetLife and deducted from the rate of return of the fund," and "MetLife also claims a tax deduction called the Dividend Received Deduction . . . on dividends received on the assets owned by MetLife on behalf of the Plan." Compl. ¶ 43. Such allegations "regarding excessive fees [and tax benefits] from which Defendants stood to gain is sufficient to support the inference that the process used by the defendants who were Plan fiduciaries to select and maintain the Plan's investment options was

20

'tainted by failure of effort, competence, or loyalty.'" *Moreno*, 2016 WL 5957307, at *6; *see also Carrigan v. Xerox Corp.*, No. 3:21-CV-1085 (SVN), 2022 WL 1137230, at *9 (D. Conn. Apr. 18, 2022) ("Plaintiffs' plausible claim that Defendants' decision-making process was imprudent, when combined with their allegations that Defendants 'stood to benefit from' the alleged imprudent and excessive fees, are enough to state a claim of disloyalty.").

Third, Defendants argue that "Plaintiffs' three-sentence allegation regarding a Dividend Received Deduction . . . is insufficient to support their disloyalty claim" because "plaintiffs fail to specify the 'MetLife' entity that claims this tax deduction" and "Defendants would retain the possibility of a DRD benefit even if the Plan replaced all of the MetLife Index Funds with other market-offered investment options." Motion at 13-14. The Court disagrees. As stated above, the proper standard for a duty of loyalty claim is whether the allegations "support[] an inference that the defendant acted *for the purpose* of providing benefits to itself or someone else." *Ferguson*, 2019 WL 4466714, at *4; *see also Nicolas v. Trs. of Princeton Univ.*, No. 17-3695, 2017 WL 4455897, at *3 (D.N.J. Sept. 25, 2017) (observing that to state a claim for breach of duty of loyalty, the plaintiff must plead "facts suggesting Defendant benefitted, financially or otherwise, from any decisions related to the Plans or engaged in disloyal conduct in order to benefit itself or someone other than the Plans' beneficiaries"). Thus, Defendants breached their duty of loyalty if they failed to act with an "eye single to the interests of the participants and beneficiaries," regardless of which MetLife entity may have ultimately benefited from Defendants' actions. *In re SunEdison, Inc. ERISA Litig.*, 331 F. Supp. 3d at 114. As to Defendants' argument that they would retain the possibility of a DRD benefit regardless of whether they had chosen proprietary investment options for the Plan, such argument raises factual questions improper for resolution at this stage. *Mulligan*,

2018 WL 8014320, at *2.  Construing the allegations in the light most favorable to Plaintiffs, the Court finds that Plaintiffs plausibly allege a claim for duty of loyalty.

* * *

Accordingly, the Court denies Defendants' Motion as to Plaintiffs' breach of fiduciary duty claim in Count I.

## C.  Failure to Monitor

Plaintiffs also allege that MetLife Group and Metropolitan Life violated their duties under ERISA by (1) "[f]ailing to monitor and evaluate the performance of the Committee or have a system in place for doing so," (2) "[f]ailing to monitor the Committee's fiduciary processes," and (3) "[f]ailing to remove members of the Committee whose performance was inadequate in that they continued to maintain imprudent, excessively costly, and poorly performing index fund investments within the Plan." Compl. ¶ 71.  As a result of these Defendants' breaches of their duty to monitor, Plaintiffs contend that "the Plan suffered millions of dollars of losses due to excessive fees and investment underperformance." *Id.* ¶ 72.

"The duty to monitor, although not explicitly imposed by statute, flows from the other duties set out in Section 1104(a) and 'require[s] those fiduciaries with the power to appoint and remove plan fiduciaries to monitor the performance of those appointees.'" *Patterson v. Morgan Stanley*, No. 16 Civ. 6568 (RJS), 2019 WL 4934834, at *7 (S.D.N.Y. Oct. 7, 2019) (quoting *In re Morgan Stanley ERISA Litig.*, 696 F. Supp. 2d 345, 366 (S.D.N.Y. 2009)).  In this regard, an underlying breach of the duties imposed by ERISA is necessary to maintain a claim for breach of the duty to monitor.  *See Rinehart¸* 817 F.3d 56 at 68 (affirming dismissal of monitoring claim when plaintiffs failed to identify a breach of prudence by the plan committee); *Jander v. Int'l Bus.*

*Mach. Corp.*, 205 F. Supp. 3d 538, 546-47 (S.D.N.Y. 2016) ("Because Plaintiffs have failed to allege an underlying breach, the duty to monitor claim is dismissed.").

Defendants principally argue that the duty to monitor claim must be dismissed because Plaintiffs have failed to adequately allege any underlying breach of fiduciary duty.  Motion at 14-15.  Defendants further argue that even if Plaintiffs have stated a valid claim for an underlying breach of fiduciary duty, Plaintiffs' duty to monitor claim nevertheless should be dismissed because "plaintiffs have not alleged any facts regarding MetLife Group and Metropolitan Life's monitoring *process*."  Motion at 14.  Neither ground is availing.  As discussed above, *see supra* III.B., Plaintiffs have plausibly alleged a claim for breach of fiduciary duty.  Moreover, "because the appropriate ERISA mandated monitoring procedures vary according to the nature of the Plan at issue and other facts and circumstances, an analysis of the precise contours of the defendants' duty to monitor at this stage is premature."  *In re Xerox Corp. ERISA Litig.*, 483 F. Supp. 2d 206, 215 (D. Conn. 2007); *see also Morgan Stanley*, 712 F.3d at 718 (recognizing that the allegations of a complaint need not "directly address" the process by which the plan was managed).

In any event, the Complaint alleges that MetLife Group and Metropolitan Life were fiduciaries of the Plan.  Compl. ¶¶ 68-69.  As fiduciaries, each of these Defendants allegedly has or had a "responsibility to monitor the performance of the Committee and its members" and to ensure that they were or are "complying with the terms of the Plan and ERISA's statutory standards."  *Id.*; *see Patterson*, 2019 WL 4934834, at *9.  And as alleged, they breached their fiduciary monitoring duties by, among other things:

    a.  failing to monitor and evaluate the performance of the Committee or have a system in place for doing so, standing idly by as the Plan suffered significant losses as a result of the Committee's imprudent actions and omissions with respect to the Plan;

b. failing to monitor the Committee's fiduciary processes, which would have alerted a prudent fiduciary to the breaches of fiduciary duties described herein; and

c. failing to remove members of the Committee whose performance was inadequate in that they continued to maintain imprudent, excessively costly, and poorly performing index fund investments within the Plan, all to the detriment of the Plan and Plan participants' retirement savings.

Compl. ¶ 71.  District courts in this Circuit had found that such allegations sufficiently state a claim for breach of the duty to monitor at the motion to dismiss stage.  *See Khan v. Bd. of Dirs. of Pentegra Defined Contribution Plan*, No. 20 Civ. 7561 (PMH), 2022 WL 861640, at *10 (S.D.N.Y. Mar. 23, 2022) (denying motion to dismiss duty to monitor claim where the plaintiffs alleged, among other things, that the monitoring defendants "fail[ed] to monitor their appointees and delegees, to evaluate their performance, or to have a system in place for doing so; fail[ed] to ensure that the monitored fiduciaries had a prudent process in place for evaluating the Plaintiff's administrative fees and ensuring that the fees were competitive, . . . and fail[ed] to remove appointees whose performance was inadequate in that they continued to allow excessive administrative fees"); *Cunningham*, 2017 WL 4358769, at *11 (denying motion with respect to the duty to monitor where the "plaintiffs allege[d] that Cornell created the Committee to oversee the Plans' investment options . . . [and] Opperman was Chair of the Committee and was given authority to appoint and remove other members of the Committee"); *In re Am. Int'l Grp., Inc. ERISA Litig. II*, No. 08 Civ. 5722 (LTS), 2011 WL 1226459, at *10 (S.D.N.Y. Mar. 31, 2011) ("A duty to monitor is pleaded sufficiently to survive a motion to dismiss when a complaint alleges that the fiduciaries responsible for appointing other fiduciaries utterly failed to establish a procedure for monitoring the appointed fiduciaries and failed to review those fiduciaries' performance." (cleaned up)).  Accordingly, Defendants' motion to dismiss the duty to monitor claim in Count II is denied.

### IV.     Conclusion

For the foregoing reasons, Defendants' motion to dismiss is denied.  Within two weeks of the date of this Opinion and Order, the parties shall file on ECF a proposed case management plan and scheduling order for the Court's consideration.  The Clerk of Court is respectfully directed to close the motion pending at Docket Number 34.

SO ORDERED.

Dated: August 1, 2022
       New York, New York

_____

JOHN P. CRONAN
United States District Judge