UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌────────────────────────────────────────
Rita Kohari, John Radolec, and Mohani
Jaikaran, individually and as representatives
of a class of similarly situated persons, and on
behalf of the MetLife 401(k) Plan (f/k/a the
Savings and Investment Plan for Employees of
Metropolitan Life and Participating Affiliates),

                            Plaintiffs,

        -against-

MetLife Group, Inc., Metropolitan Life
Insurance Company, the MetLife Group
Benefit Plans Investment Advisory Committee,
the Employee Benefits Committee of MetLife
Group, Inc., and John and Jane Does 1–20,

                            Defendants.
────────────────────────────────────────
```

**USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_1/15/2025_**

**21-cv-6146 (KHP)**

**OPINION APPROVING COLLECTIVE
SETTLEMENT AND ATTORNEYS' FEES
AND COSTS**

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

The above-captioned matter is before the Court on Plaintiffs' unopposed motion for (i) final approval of the proposed class action settlement ("Motion for Final Approval") and (ii) motion for an award of attorneys' fees and costs, administrative expenses, and awards to Plaintiffs ("Motion for Attorneys' Fees"). (ECF Nos. 132, 128.) For the reasons stated below, the Motions for Final Approval, and Motion for Attorneys' Fees are GRANTED.

## BACKGROUND

Lead Plaintiffs Rita Kohari, John Radolec, and Mohani Jaikaran brought this class action on behalf of all participants and beneficiaries of the MetLife 401(k) Plan who were invested in the MetLife Index Funds at any time on or after July 19, 2015, through December 31, 2021, excluding any persons with responsibility for the Plan's investment or administrative functions

(collectively, the "Class"), and on behalf of the MetLife 401(k) Plan ("Plan"), against Defendants

MetLife Group, Inc. ("MetLife Group"), Metropolitan Life Insurance Company ("Metropolitan

Life"),[1] the MetLife Group Benefit Plans Investment Advisory Committee ("Investment

Committee"), the Employee Benefits Committee of MetLife Group, Inc. ("Employee Benefits

Committee"), and John and Jane Does 1-20 (collectively, "Defendants").  Plaintiffs alleged

Defendants breached their fiduciary duties under the Employee Retirement Income Security Act

of 1974, as amended, 29 U.S.C. § 1001, *et seq.* ("ERISA") by applying an imprudent and disloyal

preference for MetLife's own index fund products, and failing to monitor the Plan's fiduciaries.

(Amended Complaint ("AC"), ECF No. 53 at ¶ 1.)

I.    Factual Background

   a.   The Plan and Lead Plaintiffs

The Plan was established on May 1, 1970 and was previously called the Savings and

Investment Plan for Employees of Metropolitan Life and Participating Affiliates, but was

renamed the MetLife 401(k) Plan in 2017. (*Id.* at ¶ 17.)  The Plan is considered a "defined

contribution plan" under ERISA, which means that it is a pension plan that "provides for an

individual account for each participant and for benefits based solely upon the amount

contributed to the participant's account[.]")  (*Id.*; 29 U.S.C. § 1002(34).)  The Plan is also

considered a qualified plan under 26 U.S.C. § 401, which is commonly referred to as a "401(k)

plan."  (AC at ¶ 18.)  The Plan covers eligible employees of Metropolitan Life, MetLife Group,

Metropolitan Property and Casualty Insurance Company, MetLife Funding, Inc., MetLife Credit

Corp., and SafeGuard Health Plans, Inc.  (*Id.* at ¶ 19.) Eligible employees may contribute a

---

[1] MetLife Group and Metropolitan Life are collectively referred to as "MetLife."

percentage of their earnings to the Plan on a pre-tax basis.  (*Id.*)  Between 2015 and 2021, the Plan had between 36,000 and 42,000 participants and approximately $6.4 billion to 7.3 billion in assets, making it one of the largest defined contribution plans nationwide. (*Id.* at ¶ 20.)

The Plan's investment menu consists of nine investment options, eight of which are MetLife proprietary investments, as well as a self-directed brokerage account. (*Id.* at ¶ 21.) Plaintiffs allege that during the relevant period, Defendants selected and retained seven proprietary index funds for the Plan's investment menu: the MetLife Bond Index Fund, Balanced Index Fund, Large Cap Equity Index Fund, Large Cap Value Index Fund, Large Cap Growth Index Fund, Mid Cap Equity Index Fund, and Small Cap Equity Index Fund (collectively, "MetLife Index Funds"). (*Id.* at ¶ 5.)  These index funds track benchmark indices to provide exposure to certain asset classes or segments of the market.  (*Id.*)  The MetLife Index Funds are the only index funds offered to Plan participants.  (*Id.*)

Each of the MetLife Index Funds charge an annual operating expense that is paid to MetLife and deducted from the index fund's rate of return.  (*Id.* at ¶ 45.)  Plaintiffs allege that MetLife received these operating fees and also claimed a tax deduction known as the Dividend Received Deduction ("DRD") on dividends received on the assets owned by MetLife on behalf of the Plan. (*Id.*)  According to Plaintiffs, the DRD tax benefit could be worth millions of dollars. (*Id.*)

Plaintiffs Rita Kohari, John Radolec, Mohani Jaikaran were all Plan participants during the relevant period and were invested in several, if not all, of the MetLife Index Funds.  (*Id.* at ¶¶ 14-16.)

b.  Defendants

MetLife Group is the current Plan sponsor and Plan administrator, and Metropolitan Life was previously the Plan sponsor and administrator.  (*Id.* at ¶¶ 23-24, 27-28.)

The Investment Committee is a committee that assists MetLife Group with administration of the Plan, including by selecting the funds for the Plan's investment menu.  (*Id.* at ¶ 30.)  The Employee Benefits Committee is another committee that assists MetLife Group with administration of the Plan, and is itself a named fiduciary that has the power to appoint the Plan administrator and is responsible for reviewing reports concerning the Investment Committee's conduct.  (*Id.* at ¶ 31.)

Defendants John and Jane Does 1-20 are or were members of the Investment Committee or Employee Benefits Committee between 2015 and 2021.  (*Id.* at ¶ 33.)

Plaintiffs allege that each Defendant is a Plan fiduciary.

c.  Defendants' Alleged Violations

According to Plaintiffs, the marketplace for index funds is competitive and several companies, such as BlackRock, Northern Trust, and others, offer index fund products that track benchmark indices with a high degree of precision, while charging fees much lower than those charged by the MetLife Index Funds.  (*Id.* at ¶ 46.)  Plaintiffs allege that Defendants could have negotiated competitive rates with the leading index fund managers, but failed to adequately investigate marketplace alternatives and instead chose to use the MetLife Index Funds to benefit MetLife's interests. (*Id.* at ¶¶ 46, 48.)  Plaintiffs assert that the Plan's use of the MetLife Index Funds has resulted in financial losses for themselves and Plan participants because each of the MetLife Index Funds underperformed alternative index funds, including those managed

by BlackRock, Vanguard and others.  (*Id.* at ¶ 49.)  Plaintiffs also assert that five of the MetLife

Index Funds performed worse than expected for the 5-year period ending in 2019.  (*Id.* at ¶ 50.)

II.    Procedural Background

This action was filed on July 19, 2021.  (ECF No. 1.)  On October 6, 2021, MetLife moved

to dismiss Plaintiff's complaint for failure to state a claim. (ECF No. 34.)  On August 1, 2022, the

Honorable John P. Cronan denied MetLife's motion to dismiss. (ECF No. 44). On August 30,

2022, Plaintiffs sought leave to file an amended complaint, which Judge Cronan granted. (ECF

Nos. 49, 50.)  Plaintiffs filed an amended complaint, which is the operative complaint on

September 1, 2022 (the "Complaint").  (ECF No. 53.)  On September 30, 2022, MetLife

answered the Amended Complaint. (ECF No. 60.)  On May 31, 2023, Plaintiffs moved for class

certification. (ECF No. 75.)  Thereafter, the parties engaged in private mediation before the

Honorable James F. Holderman (Ret.).  While the parties were unable to come to a resolution

during the mediation, they ultimately agreed to settlement terms on a class-wide basis (the

"Settlement").  (*See* ECF No. 105.)  The settlement was reached while the motion for class

certification was still pending.

On November 20, 2023, Plaintiffs moved for preliminary approval of the settlement

("Preliminary Approval Motion"). (ECF No. 109.) On September 10, 2024, the Parties consented

to proceed before the undersigned in accordance with 28 U.S.C. § 636(c) for the Preliminary

Approval Motion. (ECF No. 119.)  On September 16, 2024, the Court preliminarily approved the

settlement and set a date for a final approval hearing. (ECF No. 127.)

Plaintiffs then sent class notices out to approximately 48,817 current and former Plan

participants via U.S. first class mail and/or by electronic means, only 1% of which were returned

as undeliverable.  (Declaration of Heather Follensbee Regarding Settlement Administration ("Follensbee Decl."), ECF No. 134-2 at ¶ 14.)  The notices apprised class members of their right to object to the Settlement, that Lead Counsel's application for attorneys' fees would not exceed one-third of the settlement fund, and that Lead Counsel would also seek administrative expenses and class representatives' compensation.  (*Id.* at Exhibits C and D.)  In addition, the settlement administrator established a website providing information about the Settlement, and case and settlement-related documents, and also established a case-specific toll-free phone number.  (*Id.* at ¶¶ 15, 17.)  The deadline to submit objections to the Settlement was December 6, 2024.  (Preliminary Approval Motion at ¶ 11.)  No potential class member has objected to the proposed Settlement.

The Settlement was submitted to an Independent Fiduciary, Newport Trust, for review. On December 5, 2024, the Independent Fiduciary submitted a letter concluding that the Settlement terms, including the release and monetary relief, were reasonable, and recommended that the Plan not object to the Settlement.  (Declaration of Brock J. Specht in Support of Plaintiffs' Motion for Final Approval ("Specht Decl."), Exhibit 1.)

Plaintiffs now seek final approval of the proposed class action Settlement and an award of attorneys' fees and costs, administrative expenses and service awards for the Lead Plaintiffs. (ECF Nos. 128-135.)  At the fairness hearing on January 13, 2025, the parties consented to conduct all proceedings and entry of a final judgment to the undersigned. (ECF No. 138.)

III.    Settlement Agreement

The proposed Settlement Agreement defines the "Settlement Class" as

All participants and beneficiaries of the MetLife 401(k) Plan who were invested in the MetLife Index Funds at any time on or after July 19, 2015, through December 31, 2021,

excluding any persons with responsibility for the Plan's investment or administrative Functions.

(Proposed Settlement Agreement, ECF No. 111-1 at ¶ 1.9.)  Members of the Settlement Class will be entitled to a share of the Gross Settlement Amount, that is $4,500,000.00.  (*Id.* at ¶ 1.29.)  After accounting for any attorneys' fees and costs, administrative expenses, and case contribution awards approved by the Court, the net settlement amount will be distributed to eligible Settlement Class members in accordance with the plan of allocation in the Settlement. (*Id.* at ¶¶ 1.35, 5.1–5.9.)  The plan of allocation allocates settlement monies based on each class member's average qualifying account balance, which is defined as each class member's "average, aggregate quarter-ending account balance invested in MetLife Index Funds for the period of July 19, 2015, to December 31, 2021." (*Id.* at ¶ 5.2.)  The settlement administrator will determine each class member's entitlement amount by calculating each individual's pro rata share of the net settlement amount, based on their average qualifying account balance, compared to the sum of all class members' average qualifying account balances.  (*Id.*)  If an individual's entitlement amount is calculated to be less than $10.00, then the individual's pro rata share of the net settlement amount will be zero.  (*Id.*)  This is not a claims-made settlement, meaning that class members are not required to submit a claim form to receive a payment.  Members of the Settlement Class who are current Plan participants will have their Plan account automatically credited with their share, whereas former Plan participants will receive a check.  (*Id.* at ¶ 5.4.)

In exchange for the relief provided by the Settlement, the Lead Plaintiffs, the Plan and the Settlement Class will release Defendants and affiliated persons and entities from all claims:

- that arise out of the same operative facts as those alleged in the Complaint;

- that were asserted in the Complaint, or arise out of the conduct alleged in the Complaint whether or not pleaded in the Complaint;
- that arise out of, relate to, are based on, or have any connection with (i) the selection, oversight, management, monitoring, retention, or performance of the Plan's investments, or (ii) the fees, costs, or expenses charged in connection with the Plan's investments, directly or indirectly; or (iii) engaging in self-dealing or prohibited transactions in relation to the Plan, or (iv) compliance with the Plans governing documents with respect to the selection and monitoring of the MetLife Index Funds; or
- that would be barred by res judicata or claim preclusion had the Action been fully litigated to a final judgment; or
- that relate to the direction to calculate, the calculation of, and/or the method or manner of allocation, implementation or administration of the Net Settlement Fund to the Plan or any member of the Settlement Class in accordance with the Plan of Allocation; or
- that relate to the approval by the Independent Fiduciary of the Settlement Agreement.

(Motion for Final Approval at 5; Proposed Settlement Agreement at ¶ 1.4, 7.1(a)-(b).)  The

released claims do not include claims to enforce the Settlement Agreement or individual claims

for denial of benefits from the Plan.  (Proposed Settlement Agreement at ¶ 1.4.)

Lead Counsel requests that the Court approve the proposed award of attorneys' fees in

the amount of 33 1/3% of the Settlement, or $1,500,000.00, plus litigation expenses of

$212,031.12.  (Motion for Attorneys Fees at 7.)  Further, Lead Counsel requests that the Court

approve an award of administrative expenses in the amount of $160,000.00, inclusive of

$145,000 in settlement administration expenses, and $15,000 as payment for the Independent

Fiduciary.  (*Id.* at 7, 18-19.)  Finally, Lead Counsel asks the Court to approve a $15,000 service

award for each of the three Lead Plaintiffs, who spent significant time representing the Class,

including producing documents and sitting for depositions.[2]  (*Id.* at 6.)

---

[2] The proposed Settlement Agreement permits Class counsel to request service awards up to $15,000 per Class Representative. (Proposed Settlement Agreement at ¶ 6.2.)

## LEGAL STANDARD

In the Second Circuit, "[t]here is a strong judicial policy in favor of settlements, particularly in the class action context." *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 330 (E.D.N.Y. 2010) (quoting *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) (internal quotation marks omitted)). "[C]lass action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation." *Id*. Rule 23(e) provides that "claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). Court approval of a class action settlement must be premised on a hearing and subsequent finding that the settlement is "fair, reasonable, and adequate" and not the product of collusion or some other malfeasance. *See* F.R.C.P. 23(e)(3); *see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (citing *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000)).

Before approving a class action settlement, the district court must conclude that the proposed class meets the requirements for class certification set forth in Rule 23(a) and the relevant subsection of Rule 23(b). *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 239 (2d Cir. 2012). When considering a request for certification of a settlement class, the Court does not need to inquire whether the case, if tried, would ". . . present intractable management problems, for the proposal is that there be no trial." *Id.* (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). "At the same time, however . . . other specifications of [Rule 23]—those designed to protect absentees by blocking unwarranted or overbroad class definitions—demand undiluted, even heightened, attention." *Id.* (quoting *Amchem*, 521 U.S. at 620) (internal

quotation marks omitted).  "Thus, in the context of settlement, Rules 23(a) and (b) continue to serve the purpose of 'focus[ing] court attention on whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives." *Id.*

The determination of whether the class should be certified and the terms of the proposed settlement are "fair, reasonable, and adequate" rests in the discretion of the district court. *Denney v. Deutsche Bank AG,* 443 F.3d 253, 273 (2d Cir. 2006); *see* Fed. R. Civ. P. 23(e)(2).  In exercising its discretion, the district court must engage in careful balancing but "must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case."  *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).  As such, "[i]t cannot be overemphasized that neither the trial court in approving the settlement nor [the Circuit Court] in reviewing that approval have the right or the duty to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute."  *Grinnell*, 495 F.2d at 456.  "Defendants in class action suits are entitled to settle claims pending against them on a class-wide basis even if a court believes that those claims may be meritless, provided that the class is properly certified under Rules 23(a) and (b) and the settlement is fair under Rule 23(e)."  *In re Am. Int'l Grp., Inc. Sec. Litig.,* 689 F.3d 243-44 (2d Cir. 2012).

Courts tasked with approving a settlement then consider its procedural and substantive fairness, determining whether the terms of the settlement and the negotiation process leading up to it are fair.  *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 408 (S.D.N.Y. 2018), *aff'd sub nom. In re Facebook, Inc.*, 822 F. App'x 40 (2d Cir. 2020) (citing *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 575 (S.D.N.Y. 2008) (internal quotation marks

omitted)).  When a settlement is the product of "arms-length negotiations between experienced, capable counsel after meaningful discovery," it is afforded a "presumption of fairness, adequacy, and reasonableness."  *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 461 (S.D.N.Y. 2004).  Additionally, when considering the benefits achieved by a settlement, courts must keep in mind that "there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

## DISCUSSION

I.  Class Certification

After a careful review of the briefing and settlement, the Court finds that the prerequisites for certification of the proposed settlement class are satisfied.

a.  Rule 23(a)

Rule 23(a) imposes four threshold requirements for certification of a class action: (1) numerosity ("the class is so numerous that joinder of all members is impracticable"); (2) commonality ("there are questions of law or fact common to the class"); (3) typicality ("the claims or defenses of the representative parties are typical of the claims or defenses of the class"); and (4) adequacy of representation ("the representative parties will fairly and adequately protect the interests of the class").  Fed. R. Civ. P. 23(a).

With regard to the first requirement, "numerosity is presumed at a level of 40 members[.]" *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  "The movant need not provide a precise quantification of their class, since a court may make

common sense assumptions to support a finding of numerosity . . . [n]evertheless, the movant must show some evidence of or reasonably estimate the number of class members." *Kalkstein v. Collecto, Inc.*, 304 F.R.D. 114, 119 (E.D.N.Y. 2015) (internal quotation marks and citation omitted).  Here, the Settlement Class is comprised of all participants and beneficiaries of the MetLife 401(k) Plan who were invested in the MetLife Index Funds at any time on or after July 19, 2015, through December 31, 2021, excluding any persons with responsibility for the Plan's investment or administrative functions.  The parties estimate the potential class to be comprised of between 36,000 and 42,000 current or former Plan participants.  Therefore, numerosity is satisfied.

Additionally, the commonality and typicality requirements are met here.  The commonality and typicality requirements of Rule 23(a) tend to merge such that similar considerations inform the analysis for both prerequisites.  *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 349 n.5 (2011); *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997).  A class may only be certified if "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Commonality demands that the class's claims "depend upon a common contention . . . capable of classwide resolution" such that "its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Dukes,* 564 U.S. at 350. "'[F]actual differences in the claims of the class do not preclude a finding of commonality.'" *Newman v. RCN Telecom Servs., Inc.,* 238 F.R.D. 57, 73 (S.D.N.Y. 2006) (quoting 5 *Moore's Federal Practice* § 23.23).  Commonality may be found where the plaintiffs' alleged injuries "derive from a unitary course of conduct by a single system."  *Giuliani*, 126 F.3d at 377. Similarly, with the typicality requirement, Rule 23(a)(3) requires that "the claims or defenses of

the representative parties are typical of [those] of the class."  Fed. R. Civ. P. 23(a)(3).  The

typicality requirement "is satisfied when each class member's claim arises from the same

course of events and each class member makes similar legal arguments to prove the

defendant's liability."  *Giuliani,* 126 F.3d at 376.  "[M]inor variations in the fact patterns

underlying [the] individual claims" do not preclude a finding of typicality.  *Robidoux v. Celani*,

987 F.2d 931, 936-37 (2d Cir. 1993).

    Here, the common questions of law and fact in this case all relate to whether Defendants

are fiduciaries of the Plan, and if so, whether they breached their fiduciary duties under ERISA by

applying a preference for MetLife Index Funds.  Thus, all of the members of the proposed class

are alleged to have suffered the same harm based on the same acts of Defendants, and the Lead

Plaintiffs are relying on the same conduct and suffered the same harm as the other settlement

class members.  Accordingly, the commonality and typicality requirements of Rule 23(a) are met.

*See Banyai v. Mazur*, 205 F.R.D. 160, 163 (S.D.N.Y. 2002) ("In general, the question of defendants'

liability for ERISA violations is common to all class members because a breach of a fiduciary duty

affects all participants and beneficiaries."); *see Kindle v. Dejana*, 315 F.R.D. 7, *11 (E.D.N.Y. 2016)

(same).

    In order to meet the final requirement, adequate representation of the class's interests,

Plaintiffs must demonstrate that: (1) the class representatives do not have conflicting interests

with other class members; and (2) class counsel is qualified, experienced and generally able to

conduct the litigation.  *Giuliani*, 126 F.3d at 378.  To satisfy the first prong, courts in this Circuit

have required plaintiffs to show that "no fundamental conflicts exist" between the class'

representatives and its members.  *See Charron v. Wiener*, 731 F.3d 241, 249 (2d Cir. 2013)

(citing *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011)).

Here, Lead Plaintiffs and the other Settlement Class members do not have conflicting interests

as they were all injured by the same alleged acts and share a common goal of maximizing

recovery.  (Declaration of Rita Kohari, ECF No. 112 at ¶ 2 & Ex. 1; Declaration of John Radolec,

ECF No. 114 at ¶ 2 & Ex. 1; Declaration of Mohani Jaikaran, ECF No. 113 at ¶ 2 & Ex. 1.)

Moreover, Lead Plaintiffs have demonstrated their commitment to this litigation by retaining

qualified and experienced counsel and spending time litigating this case and participating in

settlement negotiations.  (*See* Motion for Attorneys' Fees at 6.)  Thus, the Court finds that Lead

Plaintiffs are adequate representatives.  In addition, Lead Counsel are experienced in ERISA

class actions and negotiating class action settlements, and have vigorously litigated this action

against qualified defense counsel, reaching a favorable settlement for the class.  (*See*

Declaration of Brock J. Specht in Support of Plaintiffs' Motion for Attorneys' Fees, ECF No. 130

at 1-6.)  Thus, the Court finds that Lead Counsel satisfies Rule 23(a) adequacy requirements.

    b.  <u>Rule 23(b)(1)</u>

    In addition to satisfying the Rule 23(a) requirements, certification must be appropriate

under Rule 23(b).  *B & R Supermarket, Inc. v. Mastercard Int'l Inc.*, 2021 WL 234550, at *20

(E.D.N.Y. Jan. 19, 2021) (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013)).  To satisfy

Rule 23(b)(1), Lead Plaintiffs must show that the prosecution of separate actions would create

either (A) the risk of "inconsistent or varying adjudications with respect to individual class

members," Fed.R.Civ.P. 23(b)(1)(A), or (B) the risk of "adjudications with respect to individual

class members that, as a practical matter, would be dispositive of the interests of the other

members not parties to the individual adjudications or would substantially impair or impede

their ability to protect their interests," Fed.R.Civ.P. 23(b)(1)(B).

As relevant to the present dispute, "cases involving breach of fiduciary duty affecting a large class of beneficiaries have been called '[c]lassic examples' of matters falling within Rule 23(b)(1).'" *Kindle*, 315 F.R.D. at 12 (quoting *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 833–34, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999)).  Indeed, the risk of inconsistent adjudications "speaks directly to ERISA suits, because the defendants have a statutory obligation, as well as a fiduciary responsibility, to 'treat the members of the class alike.'"  *In re Citigroup Pension Plan ERISA Litig.*, 241 F.R.D. 172, 179 (S.D.N.Y. 2006).  Permitting multiple actions on behalf of individual participants, poses the risk that plaintiffs would obtain inconsistent dispositions, thereby creating "incompatible standards of conduct" for the Defendants.  *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 78 (S.D.N.Y. 2006).  Further, "a breach of fiduciary duty claim brought by one member of a retirement plan necessarily affects the rights of the rest of the plan members to assert that claim, as the plan member seeks recovery on behalf of the plan as an entity." *Kindle*, 315 F.R.D. at 12; *see* Fed.R.Civ.P. 23(b)(1)(B) adv. comm. note, 1966 amend. (stating that certification under 23(b)(1)(B) is appropriate in cases charging breach of trust by a fiduciary to a large class of beneficiaries).  Thus, the Court finds that the requirements under Rule 23(b)(1) are met.

II.    <u>The Settlement Is Fair In Light of Rule 23 and the *Grinnell* Factors</u>

Rule 23(e)(2), as amended on December 1, 2018, instructs the Court to determine whether the Settlement is "fair, reasonable, and adequate" after considering whether:

>    (A) the class representatives and class counsel have adequately represented the class;
>    (B) the proposal was negotiated at arm's length;
>    (C) the relief provided for the class is adequate, taking into account:
>        (i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
(iii) the terms of any proposed award of attorney's fees, including timing of payment; and
(iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Whether a settlement is "fair, reasonable, and adequate" entails a review of both procedural and substantive fairness. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85-86 (2d Cir. 2001). "Fairness is determined upon review of both the terms of the stipulation and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005).

Prior to the 2018 amendments to Rule 23 pertaining to settlements, courts in the Second Circuit had long considered whether a settlement was fair, reasonable, and adequate" under the nine factors set out in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974):

(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.* at 463, *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). Importantly, "not every factor must weigh in favor of [the] settlement, rather the court should consider the totality of these factors in light of the particular circumstances." *In re Glob. Crossing*, 225 F.R.D. at 456.

The Advisory Committee Notes to the 2018 amendments to Rule 23 indicate that the

four new Rule 23(e) factors were intended to supplement rather than displace the *Grinnell*

factors.  *See* 2018 Advisory Notes to Fed. R. Civ. P. 23, Subdiv. (e)(2).  Accordingly, the Court

considers both sets of factors in its analysis.  *See In re GSE Bonds Antitrust Litig.,* 414 F. Supp. 3d

686, 692 (S.D.N.Y. 2019).

Finally, "[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their]

judgment for that of the parties who negotiated the settlement."  *In re EVCI Career Colls.*

*Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).  Notably,

"[s]ettlement approval is within the Court's discretion, which 'should be exercised in light of the

general judicial policy favoring settlement.'"  *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 280

(citation omitted).

a.  Procedural Fairness

As to procedural fairness, a District Court reviewing a proposed settlement must pay close

attention to the negotiating process, to ensure that the settlement resulted from arm's-length

negotiations and that plaintiffs' counsel . . . possessed the [necessary] experience and ability, and

have engaged in the discovery, necessary to effective representation of the class's interests."

*D'Amato*, 236 F.3d at 85 (alterations in original) (internal quotation marks omitted).  Accordingly,

"[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of

the parties who negotiated the settlement."  *Hall v. ProSource Techs., LLC*, 2016 WL 1555128, at

*4 (E.D.N.Y. Apr. 11, 2016) (citing *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at

*2 (E.D.N.Y. Nov. 20, 2012) (internal quotation marks omitted).

Here, as discussed *supra*, Counsel for both sides are experienced in class action

litigation, conducted extensive investigations of the facts, exchanged sufficient information to

understand facts pertinent to the settlement negotiations, and engaged in motion practice, which also illuminated the risks of litigation to the parties.  (*See* ECF No. 111 at ¶¶ 9-16;  ECF Nos. 34, 36.)  All of this supports a finding that counsel and Lead Plaintiffs were well informed of the risks of litigation and benefits of compromise.  Moreover, the Settlement is the product of arm's length negotiations between the parties' counsels, and was at least in part conducted with the assistance of an experienced mediator.  (*See* ECF No. 111 at ¶ 17.)  Additionally, notice of the settlement was widely distributed and advertised, giving all potential class members an opportunity to learn about the case and object to the settlement.  These facts support the conclusion that this settlement process was procedurally fair and that the "plaintiffs' counsel . . . possessed the experience and ability, and have engaged in the discovery[] necessary to effective representation of the class' interests."  *In re Parking Heaters, Antitrust Litig.*, No. 15MC0940DLIJO, 2019 WL 8137325, at *3 (E.D.N.Y. Aug. 15, 2019) (quoting *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001)).  Therefore, the Court concludes that the settlement was procedurally fair.

      b.  <u>Substantive Fairness</u>

As to substantive fairness, the Court considers whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors.  Fed. R. Civ. P. 23(e)(2)(C).  Rule 23(e)(2)(C)(i) incorporates the factors set out in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), and courts in this Circuit have long utilized the *Grinnell* nine-factor test in determining whether a settlement is substantively fair, reasonable, and adequate.  *See, e.g.*, *In re Sony Corp. SXRD,* 448 Fed. Appx. 85, 86 (2d Cir. 2011) (summary order).

The first and third *Grinnell* factors evaluate the complexity, expense, and likely duration of the litigation, the stage of the proceedings and the amount of discovery completed – all of which favor approval of the proposed settlement.  "Class action suits have a well-deserved reputation as being most complex[.]"  *Mikhlin v. Oasmia Pharm. AB*, 2021 WL 1259559, at *5 (E.D.N.Y. Jan. 6, 2021) (internal citations and quotation marks omitted).  This case is no exception, as it concerns allegations of various breaches of fiduciary duties involving the management of the Plan and selection of index funds.  *Bekker v. Neuberger Berman Grp. 401(k) Plan Inv. Comm.*, 504 F. Supp. 3d 265, 269 (S.D.N.Y. 2020) ("ERISA 401(k) fiduciary breach class actions are extremely complex and require a willingness to risk significant resources in time and money, given the uncertainty of recovery and the protracted and sharply-contested nature of ERISA litigation.")  Moreover, this case has been pending for over three years and both sides have spent significant time and expense on it.  Indeed, by the time the parties settled, they had completed fact discovery, exchanging over 400,000 pages of documents, and had started expert discovery.  Therefore, Lead Counsel "had the requisite information to make informed decisions about the relative benefits of litigating or settling."  *In re Glob. Crossing Sec.*, 225 F.R.D. at 458.

Based on the above, the Court finds that the first and third *Grinnell* factors weigh in favor of approval of the settlement.  *In re Austrian and German Bank Holocaust Litig.,* 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000).

*Grinnell* factors four and five – the risks of establishing liability and damages also favor the proposed settlement.  In considering these factors, the Court need not adjudicate the disputed issues or decide unsettled questions; rather, "the Court need only assess the risks of

litigation against the certainty of recovery under the proposed settlement." *In re Global Crossing Sec.*, 225 F.R.D. at 459. Here, Plaintiffs acknowledge there is no guarantee that the evidence will support their claims against Defendants and that they would prevail at trial. (Motion for Final Approval at 13.) And even if Plaintiffs could prove liability, Plaintiffs would have to establish loss and damages, which may be difficult to do. *See e.g.*, *Sacerdote v. New York Univ.*, 328 F. Supp. 3d 273 (S.D.N.Y. 2018) (finding that "while there were deficiencies in the [fiduciary's] processes . . . plaintiffs have not proven that the Committee acted imprudently or that the Plans suffered losses as a result."), *aff'd*, 9 F.4th 95 (2d Cir. 2021). Even if the Class did win at trial, the additional delay of trial, any post-trial motions or appeals would further delay the Class any actual recovery for years. *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 138-39 (S.D.N.Y. 2010). Furthermore, to resolve all disputed issues regarding damages and liability, the parties would have to rely on expert testimony, which creates further litigation risk and uncertainty, particularly if expert testimony is subject to a *Daubert* motion. Thus, *Grinnell* factors four and five support approval of the settlement.

Four of the *Grinnell* factors concern the reaction of the class to the settlement, the risks in maintaining the class action through the trial, and the range of reasonableness of the settlement fund in light of the best possible recovery in light of all of the risks of litigation. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 47-48 (E.D.N.Y. 2019) ("The range of reasonableness of the settlement in light of the best possible recovery, and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation, are two *Grinnell* factors that are often combined for the purposes of analysis.") After careful review, the Court finds all of these factors favor approving the proposed settlement.

"Courts generally acknowledge that a contested motion to certify a class would pose at least some increased risk that class certification might be denied." *Mikhlin,* 2021 WL 1259559, at *6 (citing *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 40 (E.D.N.Y. 2019) (internal citation omitted). While Defendants do not oppose certification of the Settlement Class, before the parties settled, Defendants had filed an opposition to Plaintiff's motion to certify the class, and the motion to certify was still pending at the time the parties settled. *See Garland v. Cohen & Krassner*, 2011 WL 6010211, at *8 (E.D.N.Y. Nov. 29, 2011) (citing *In re Med. X-Ray Film Antitrust Litig.*, No. CV-93-5904, 1998 WL 661515 (E.D.N.Y. Aug. 7, 1998)) (possibility that defendants would challenge maintenance of a class in the absence of settlement was considered a risk to the class and potential recovery); *In re Marsh ERISA Litig.*, 265 F.R.D. at 140 (observing that the fact that the class certification motion was pending at the time of settlement created uncertainty surrounding class certification, which supported approval of the settlement).

"In considering the reasonableness of the settlement fund, a court must compare the terms of the compromise with the likely rewards of litigation." *In re Payment Card*, 330 F.R.D. at 48 (internal citations omitted). The range of reasonableness for a settlement is a "range which recognizes the uncertainties of law and fact in any particular case and concomitant risks and costs necessarily inherent in taking any litigation to completion." *Mikhlin,* 2021 WL 1259559, at *8 (quoting *Wal-Mart*, 396 F.3d at 119) (internal quotation marks omitted). Here, the parties agreed to the Settlement Amount after working with a neutral mediator and after negotiations. At the time the parties settled, Plaintiffs' damages models estimated that the Settlement Class' total losses ranged from $16.3 million to $23.5 million. Therefore, the $4.5

million Settlement Amount represents a recovery of approximately 19% to 27% of the total

estimated losses.  (Motion for Final Approval at 12.)  This percentage recovery is well within the

range found to be fair and reasonable.  *See, e.g.*, *Beach v. JPMorgan Chase Bank, Nat'l Ass'n*,

No. 17-CV-00563-JMF, 2020 WL 6114545 (S.D.N.Y. Oct. 7, 2020) (approving a settlement

amount that represented approximately 16% of plaintiffs' estimated losses); *Goldstein v.*

*Mutual of Am. Life Ins. Co.*, No. 22-CV-07862 (S.D.N.Y. Sept. 20, 2023) (ECF

No. 71 at 11), approved by ECF No. 77 (S.D.N.Y. Oct. 5, 2023) (requesting and approving

settlement that represented approximately 26% of alleged losses).

The final *Grinnell* factor – the ability of the defendant to withstand a greater judgment –

is neutral.  This factor stands for the proposition that if a defendant would be unable to pay a

larger award than what is provided for in the settlement, then the settlement is more likely to

be reasonable, fair, and adequate.  *See In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D.

104, 129 (S.D.N.Y. 1997), *aff'd sub nom., In re PaineWebber Inc. Ltd. Partnerships Litig.*, 117 F.3d

721 (2d Cir. 1997).  Here, while it is possible Defendants could withstand a greater judgment,

even if they could, it does not necessarily preclude a finding that the settlement is fair.  *See In*

*re Payment Card*, 330 F.R.D. at 47 (citing *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179,

201 (S.D.N.Y. 2012)).  On balance, the *Grinnell* factors weigh in favor of approval of the

settlement.

c.  Remaining Rule 23(e) Factors

With regard to the remaining 23(e) factors, the costs, risks, and delay of trial and appeal

favor approval of the Settlement.  As discussed above, this case has been pending for over three

years.  Relatedly, were this case to proceed to trial, Plaintiffs may be unsuccessful in proving

liability or damages, as detailed above. A settlement avoids all of these risks and the delay associated with further litigation, providing immediate relief to the class (albeit at a fraction of their total alleged damages). Avoidance of the costs, risks and time involved in further litigation support approval of the settlement.

The Court also considers the proposed allocation plan for distributing the Settlement Amount to the class members. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii). "To warrant approval, the plan of allocation must also meet the standards by which the settlement was scrutinized — namely, it must be fair and adequate . . . [a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *Id.* (citing *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005) (internal citations and quotation marks omitted); *see also In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 180 (S.D.N.Y. 2014) ("When formulated by competent and experienced class counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis") (internal citations omitted). Here, the plan of allocation distributes the settlement proceeds on a pro rata basis to class members and was agreed upon by counsel on both sides, who have prepared similar plans for numerous other cases. It provides recovery to Class members, net of administrative expenses and attorneys' fees and costs, on a pro rata basis. The plan of allocation also provides for the appointment of a settlement administrator, who will perform the allocation calculation described in the plan of allocation. (Settlement Agreement, ECF No. 111-1 at ¶ 5.1-5.2.) The Independent Fiduciary reviewed the Settlement Agreement, including the plan of allocation and found it to be reasonable. (*See* Specht Decl. Exh. 1.) In addition, class members who are current Plan participants will be automatically credited with their share of the net settlement fund, while

former participants will receive direct payment by check, unless they elect to have their distribution rolled over to an individual retirement account or other eligible employer plan. (*Id.* at ¶ 5.4.)  This methodology is appropriate, and consistent with prior cases, and therefore, the Court approves it.

        d.  <u>Attorneys' Fees and Costs</u>

The Court next addresses attorneys' fees that will be paid from the settlement.  *See* Rule 23(e)(C)(iii).  Lead Counsel seeks attorneys' fees in the amount of 33 1/3% of the Settlement, or $1,500,000.00, plus litigation expenses of $212,031.12.  (Motion for Attorneys Fees at 7.)  Further, Lead Counsel requests that the Court approve an award of administrative expenses in the amount of $160,000.00, inclusive of $145,000 in settlement administration expenses, and $15,000 as payment for the Independent Fiduciary.  (*Id.* at 7, 18-19.)  The Court has reviewed the documents in support of their request for attorney's fees and costs.  For the reasons discussed below, the Court grants the Motion for Attorneys' Fees in its entirety.

        i.     *<u>Attorneys' Fees</u>*

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  "Both the lodestar and the percentage of the fund methods are available to district judges in calculating attorneys' fees . . ."  *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).

"The trend in this circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation."  *In re Parking Heaters,* 2019 WL 8137325, at *7 (quoting *Wal-Mart*, 396 F.3d at 121) (internal quotation marks omitted).  A court applying either

the percentage or lodestar method should consider the following *Goldberger* factors: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Id.* (citing *Goldberger*, 209 F.3d at 50).

Plaintiffs seek fees equal to one-third of the settlement fund.  Courts in this Circuit routinely find that a percentage of fund award is appropriate and that a one-third percentage is fair and reasonable.  *See, e.g., Moloney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (collecting cases and noting that "Class Counsel's request for 33% of the settlement fund is typical in class action settlements in the Second Circuit."); *Anwar v. Fairfield Greenwich Ltd*., 2012 WL 1981505, at *3 (S.D.N.Y. June 1, 2012) (33% fee request of the approximate $7.7 million settlement fund "is well within the percentage range that courts within the Second Circuit have awarded in other complex litigations"); *Puddu v. 6D Glob. Techs., Inc.,* 2021 WL 1910656, at *6 (S.D.N.Y. May 12, 2021) (awarding attorney's fees in the amount of one-third (33.3%) of the settlement fund is within the range for rates in this district and thus reasonable). Thus, Lead Counsel's request for fees amounting to a third of the total settlement are reasonable.

The claimed fees are also reasonable under the lodestar method.  In this case, Plaintiffs' counsel attests that a total of approximately 2,600 hours were spent working on this litigation. (ECF No. 130 at ¶ 12.)  As the Court stated *supra*, class counsel in this case is experienced in complex ERISA class action cases.  The time and labor expended by class counsel is supported by time records and reasonable considering the procedural posture of this case, which has been pending for over three years, and the advocacy needed to respond to the motion to dismiss and

negotiate an advantageous settlement for the class, the complexity of the case and uncertainty of the outcome, as discussed above. (*Id.* at ¶¶ 11-12.) The hours spent, multiplied against counsels' rates result in a total lodestar amount of $1,413,107.50. (*Id.* at Exhibit 1.) This results in a lodestar multiplier of 1.06. This lodestar cross-check demonstrates that the percentage of the fund sought for attorneys' fees is reasonable. The Court also notes that Lead Counsel will incur additional time in connection with implementation of the Settlement.

Finally, "[p]ublic policy favors the award of reasonable attorneys' fees in class action settlements." *Jermyn v. Best Buy Stores, L.P.*, 2012 WL 2505644, at *12 (S.D.N.Y. June 27, 2012). Courts in this Circuit have recognized the importance of private enforcement actions and the corresponding need to incentivize attorneys to pursue such actions on a contingency fee basis. *See In re Initial Public Offering Sec. Litig.*, 671 F. Supp. 2d 467, 515-16 (S.D.N.Y. 2009). Further, ERISA itself provides for private enforcement. *See, e.g.,* ERISA § 502(a), 29 U.S.C. § 1132(a). This case is no exception. Accordingly, public policy supports awarding the requested fee.

In sum, for the reasons discussed above, Plaintiffs' counsels' application for attorneys' fees in the amount of 33 1/3% of the settlement fund is granted.

### ii. Costs and Administrative Expenses

Lead Counsel requests an award of $212,031.12 in costs. (*See* ECF No. 130 at ¶ 19.) "Courts routinely note that counsel is entitled to reimbursement . . . for reasonable litigation expenses." *Anwar v. Fairfield Greenwich Ltd.*, 2012 WL 1981505, at *3 (S.D.N.Y. June 1, 2012) (citing *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*, 818 F.2d 278, 283 (2d Cir. 1987)). In this case, Plaintiffs' counsel submitted a declaration which itemizes counsel's expenses incurred in this action, including expert fees, financial data charges, depositions, mediation,

computerized research, copying and travel—all reasonable expenditures in this type of action. (*See* ECF No. 130 at ¶ 19.)  Accordingly, the Court grants the motion for costs in the amount of $212,031.12.  *See Bekker*, 504 F. Supp. 3d at 272 (granting reimbursement of costs for experts' fees, travel, mediation fees, and photocopying costs).

Plaintiffs also request reimbursement of administrative expenses in the amount of $160,000, which consists of $145,000 for the Settlement Administrator and Escrow Agent, and $15,000 for the Independent Fiduciary. (Motion for Attorneys' Fees at 7-8.) This amount is appropriate given the size of the Class, and therefore the Court grants the motion for administrative expenses in the amount of $160,000.  *See Moreno v. Deutsche Bank Americas Holding Corp.*, No. 15 CIV. 9936 (LGS), 2019 WL 13525007 (S.D.N.Y. Mar. 7, 2019).

e.  Incentive Awards

Plaintiffs also request incentive awards of $15,000 for each of the Lead Plaintiffs.  (Motion for Attorneys' Fees at 19-20.)  Collectively, this amounts to $45,000.  Incentive awards "are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs."  *Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 101 (E.D.N.Y. 2015) (internal quotation marks and citation omitted); *see also Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 124 (S.D.N.Y. 2001) ("An incentive award is meant to compensate the named plaintiff for any personal risk incurred by the individual or any additional effort expended by the individual for the benefit of the lawsuit.").

The Motion for Attorneys' Fees details the Lead Plaintiffs' efforts in this action.  (Motion for Attorneys' Fees at 6.)  For example, the Lead Plaintiffs provided information to class counsel

to inform the complaint, produced documents in response to Defendants' discovery requests, sat for depositions, and reviewed and signed answers to interrogatories.  (*Id.*)  Further, courts have recognized that "ERISA litigation against an employee's current or former employer carries unique risks and fortitude, including alienation from employers or peers."  *Beesley v. Int'l Paper Co.*, No. 3:06-CV-703-DRH-CJP, 2014 WL 375432, at *4 (S.D. Ill. Jan. 31, 2014).

The incentive awards requested are in line with or less than others awarded in this Circuit.  *See Bekker*, 504 F. Supp. 3d at 265 (awarding an incentive award of $20,000 for lead plaintiff); *In re Marsh ERISA Litig.*, 265 F.R.D. at 151 (granting incentive award of $15,000 for each of three lead plaintiffs).  Therefore, the Court grants the requests for incentive awards in the amount of $15,000 for Rita Kohari, John Radolec and Mohani Jaikaran.

## CONCLUSION

For all the above reasons, the Motion for Final Approval (ECF No. 132) is GRANTED.  The Motion for Attorneys' Fees (ECF No. 128) is also GRANTED.

**The Clerk of Court is respectfully directed to terminate the motions at ECF No. 128 and 132.**

**SO ORDERED.**

Dated: January 15, 2025
        New York, New York

_____
KATHARINE H. PARKER
United States Magistrate Judge